Margaret A. McLetchie, Bar No. 10931
Allen Lichtenstein, Bar No. 3992
Lee Rowland, Bar No. 10209
**ACLU OF NEVADA**
732 S. Sixth Street, Suite 200A
Las Vegas, NV 89101
(702) 366-1902
mcletchie@aclunv.org
Attorneys for Plaintiffs Does 1-5

Robert L. Langford, Bar No. 3988
**ROBERT L. LANGFORD & ASSOCIATES**
616 S. Eighth Street
Las Vegas, Nevada 89101
(702) 471-6535
robert@robertlangford.com
Attorneys for Plaintiffs Does A-G

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| The American Civil Liberties Union of Nevada, Does 1-5 and Does A-G, individuals,<br><br>                              Plaintiffs,<br><br>          v.<br><br>Catherine Cortez Masto, Attorney General of the State of Nevada; Jerald Hafen, Director of the Nevada Department of Public Safety; Bernard W. Curtis, Chief, Parole and Probation Division of the Nevada Department of Public Safety; Captain P.K. O'Neill, Chief, Records and Technology Division of the Nevada Department of Public Safety; Michael Haley, Sheriff of the Washoe County Sheriff's Office;  Michael Poehlman, Chief of the Reno Police Department; Richard A. Gammick, District Attorney of Clark County; Douglas Gillespie, Sheriff of the Las Vegas Metropolitan Police Department; Joseph Forti, Chief of the North Las Vegas Police Department; David Roger, District Attorney of Clark County; Chief Richard Perkins, Henderson Police Department,<br><br>                              Defendants. | **42 U.S.C. § 1983 COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

- 1-

COMPLAINT

Come now the Plaintiffs, Does 1-5 and Does A-G by and through the undersigned attorneys, and file this Complaint for injunctive and declaratory relief.  This is an action under 42 U.S.C. § 1983 to address the unconstitutionality of  Nevada's sex offender laws, [1] as modified by AB579 and SB471, passed by the Nevada State Legislature last session ("New Sex Offender Laws").  Plaintiffs challenge the New Sex Offender Laws both facially and as applied, and request that this Honorable Court declare the New Sex Offender Laws to be in violation of the U.S. and Nevada Constitutions and permanently enjoin the Defendants from enforcing the laws.

## NATURE OF THE ACTION

As alleged with greater particularity below, Plaintiffs allege that specific provisions of the New Sex Offender Laws are unconstitutionally vague in violation of the due process protections of the U.S. and Nevada constitutions and amount to retroactive punishment, in violation of the *ex post facto* clause of the U.S. Constitution and the retroactivity clause of the Nevada Constitution.  Plaintiffs also allege that the New Sex Offender Laws further violate the Due Process, Substantive Due Process, Equal Protection, Double Jeopardy, Contracts, and Takings clauses of the U.S. and Nevada Constitutions.  Plaintiffs also allege that the New Sex Offender Laws violate their rights to acquire, possess and protect property; their rights to seek and obtain safety and happiness; their rights to travel, life and liberty; and their rights to freedom of association and religion protected by the First Amendment and Due Process Clause of the U.S. Constitution, as well as Article 1, Sections 4 and 8 of the Nevada Constitution.

---

[1] The specific provisions at issue are (1) N.R.S. 179D113, N.R.S. 179D.115, N.R.S. 179D.117 and 179D.450 as amended by AB 579 (now changing tier level classifications and taking away individualized assessment for tier level determination); (2) N.R.S. 179D.443, N.R.S. 179D.475 and  N.R.S. 179D.495 as amended by AB579 (now imposing website notification requirements on all sex offenders, regardless of tier levels and imposing neighborhood  notification on all Tier III offenders, including offenders previously not subject to community notification); (3) NRS 179B.250, N.R.S. 179D.441, N.R.S. 179D. 480 (now imposing community notification through website and other means to all sex offenders and changing duty to register requirements) and (4); and N.R.S. 176A.410, N.R.S. 213.1245 as modified by SB471 (now imposing residency and movement restrictions on individuals on parole, probation or suspended sentence).

Additionally, Plaintiffs allege that the New Sex Offender Laws constitute cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution and Article 1, § 8 of the Nevada Constitution.  Finally, Plaintiffs allege that the New Sex Offender Laws violate the Separation of Powers doctrine of the Nevada Constitution (NEV. CONST., ART. 1, § 8, cl. 6)

## I.    JURISDICTION

1.    This Court has original subject matter jurisdiction over the federal Constitutional violations alleged in this Complaint pursuant to the provisions of 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331 and 1343. Pursuant to 28 U.S.C. §1367(a), this Court has supplemental jurisdiction over Plaintiff's state law claims.  This Court has jurisdiction to issue injunctive and declaratory relief pursuant to 28 U.S.C. § 2201 and 42 U.S.C. § 1983.

2.    Venue is proper in the District of Nevada pursuant to 28 U.S.C. §1391.  All parties work and reside in Nevada, and all actions pertinent to this complaint occurred in Clark County or Washoe County, Nevada.

## II.    PARTIES

3.    Plaintiff American Civil Liberties Union of Nevada is a non-profit civil liberties organization, and brings suits to protect the constitutional rights of all the residents of Nevada. At least one member of the ACLU, Doe 2, is a member of the ACLU.  The ACLU has received hundreds of complaints by sex offenders in Nevada about the implementation of AB579 and SB471.

4.    Plaintiff Doe 1, a resident of Clark County, Nevada, was convicted of a sexual offense in 1986.  He is currently a Tier II sex offender, and has been recently informed that he will have to register as a Tier III sex offender beginning on July 1 of 2008

COMPLAINT

5.    Plaintiff Doe 2, a resident of Clark County, Nevada, was convicted of a sexual offense in 1999.  He is currently a Tier I sex offender, and has been recently informed that he will have to register as a Tier III sex offender beginning on July 1 of 2008.

6.    Plaintiff Doe 3, a resident of Washoe County, Nevada, was convicted of a sexual offense in 2005.  He is currently a Tier I sex offender and has been recently informed that he will have to register as a Tier III sex offender beginning on July 1 of 2008.

7.    Plaintiff Doe 4, a resident of Clark County, Nevada, was convicted of a sexual offense in 1993.  He was not required to register as a sex offender and has been recently informed that he will have to register as a Tier III sex offender beginning on July 1 of 2008.

8.    Plaintiff Doe 5, a resident of Washoe County, Nevada, was convicted of a sexual offense in 2003.  He is currently a Tier I sex offender and has been recently informed that he will have to register as a Tier III sex offender beginning on July 1 of 2008.

9.    Plaintiff Doe A, a resident of Washoe County, Nevada was convicted of a sexual offense in 2002.  He is currently a Tier 1 sex offender and has recently been informed that he will have to register as a Tier III sexual offender beginning on July 1, 2008.

10.   Plaintiff Doe B, a resident of Clark County, Nevada was convicted of a sexual offense in1996.  He is currently a Tier 1 sex offender and has recently been informed that he will have to register as a Tier III sexual offender beginning on July 1, 2008.

11.   Plaintiff Doe C, a resident of Clark County, Nevada was convicted of a sexual offense in 1997.  He is currently a Tier I sex offender and has recently been informed that he will have to register as a Tier III sex offender beginning on July 1, 2208.

- 4-

COMPLAINT

12.   Plaintiff Doe D, a resident of Clark County, Nevada, was convicted of a sexual offense in 2005.  He is currently a Tier I sex offender and has been recently informed that he will have to register as a Tier III sexual offender beginning on July 1, 2008.

13.   Plaintiff Doe E, a resident of Clark County, Nevada, was convicted of a sexual offense in 2002.  He is currently a Tier II sex offender and has been recently informed that he will have to register as a Tier III sexual offender beginning on July 1, 2008.

14.   Plaintiff Doe F, a resident of Clark County, Nevada, was convicted of a sexual offense in 1983.  He is currently a Tier 1 sex offender and has been recently informed that he will have to register as a Tier III sexual offender beginning on July 1, 2008.

15.   Plaintiff Doe G, a resident of Clark County, Nevada, was convicted of a sexual offense in 1983.  He is currently a Tier 1 sex offender and has been recently informed that he will have to register as a Tier III sexual offender beginning on July 1, 2008

16.   "Does" herein refers to Does 1-5 and Does A-G.

17.   Defendant Catherine Cortez Masto is the Attorney General of the State of Nevada. Defendant Masto is sued in her official capacity.

18.   Defendant Jerald Hafen is Director of the Nevada Department of Public Safety.  The Nevada Department of Public Safety is vested with the authority to enforce the New Sex Offender Laws. Defendant Hafen is sued in his official capacity.

19.   Defendant Bernard W. Curtis is the Chief of the Parole and Probation Division of the Nevada Department of Public Safety.  The Parole and Probation Division is vested with authority to enforce the New Sex Offender Laws.  Defendant Curtis is sued in his official capacity.

20.   Defendant Captain P.K. O'Neill is Chief of the Records and Technology Division of the Nevada Department of Public Safety.  The Records and Technology Division is vested with

COMPLAINT

authority to enforce the New Sex Offender Laws, including but not limited to the community notification provisions (regarding website notification) therein.  Defendant O'Neill is sued in his official capacity.

21.  Defendants Masto, O'Neill, and Curtis are hereafter collectively referred to as "State Defendants."

22.  Defendant Michael Haley is Sheriff of the Washoe County Sheriff's Office.  The Washoe County Sheriff's Office is vested with authority to enforce the New Sex Offender Laws, including but not limited to the community notification provisions therein.  Defendant Haley is sued in his official capacity.

23.  Defendant Michael Poehlman is Chief of the Reno Police Department.  The Reno Police Department is vested with authority to enforce the New Sex Offender Laws, including but not limited to the community notification provisions therein.  Defendant Poehlman is sued in his official capacity.

24.  Defendant Richard A. Gammick is District Attorney of Washoe County, and is responsible for enforcement of the New Sex Offender Laws.  Defendant Gammick is sued in his official capacity.

25.  Defendants Haley, Poehlman, and Gammmick are hereafter collectively referred to as "Washoe County Law Enforcement Defendants."

26.  Defendant Douglas Gillespie is Sheriff of the Las Vegas Metropolitan Police Department ("Metro").  Metro is vested with authority to enforce the New Sex Offender Laws, including but not limited to the community notification provisions therein.  Defendant Gillespie is sued in his official capacity.

COMPLAINT

27.   Joseph Forti is Chief of the North Las Vegas Police Department. The North Las Vegas Police Department is vested with authority to enforce the New Sex Offender Laws, including but not limited to the community notification provisions therein.  Defendant Forti is sued in his individual capacity.

28.   Defendant David Roger is the District Attorney for Clark County, Nevada.

29.   Defendant Chief Richard Perkins of the Henderson Police Department.  The Henderson Police Department is vested with authority to enforce the New Sex Offender Laws, including but not limited to the community notification provisions therein.  Defendant Perkins in sued in his individual capacity.

## III.    STANDING

30.   The ACLU has standing because it has at least one member, Doe 2, who has standing.  The ACLU also serves as a resource center on civil liberties issues, including the New Sex Offender Laws, and has received hundreds of phone calls, walk-ins, requests for legal advice, and other requests for information about the implementation of the New Sex Offender Laws.

31.   All Doe Plaintiffs are directly affected by the New Sex Offender Laws and their unconstitutional enforcement.  The New Sex Offender Laws and their enforcement have directly caused a violation of Plaintiffs' rights under the U.S. and Nevada Constitutions.  Thus, the requirements for Article III standing have been met.

## IV.    GENERAL ALLEGATIONS

**THE NEW SEX OFFFENDER LAWS**

32.   In June of 2007, Governor Gibbons signed AB579 and SB471 into law.  The new laws are about to be implemented in their entirety on July 1, 2008, AB579 and SB471 will

COMPLAINT

dramatically change how sex offenders are defined and classified in Nevada, and what restrictions and requirements apply to sex offenders.  The laws were integrated with Nevada's existing sex offender laws.   "New Sex Offender Laws" herein refers to the revised statutes pertaining to sex offenders, as amended by AB579 and SB4171.  The current system is based upon an individualized assessment of risk of recidivism. N.R.S. 179D113, N.R.S. 179D.115, and N.R.S. 179D.117, addressing tier level registration, as amended by AB579 and AB579, replace the existing individualized, risk-based system with a tier assignment dictated only by the crime committed by the offender, and now include offenders who committed any crime with any "sexual element" since July 1, 1956.  Many offenders who were previously classified by the State of Nevada as Tier I, or low risk, offenders are now being retroactively reclassified as Tier III offenders.  On information and belief, there are also offenders who have been determined by the State of Nevada to be a higher risk and classified as Tier II or Tier III offenders whose tier level will be decreased.  On information and belief, numerous people not previously considered "sex offenders" will now fall under the changed definition and will be required to register and subject to community notification and other onerous requirements and limitations.   These restrictions are being imposed retroactively, regardless of the limitations imposed – or not imposed – on offenders at sentencing.  Thus, AB579 and SB471 are being applied to the effect that requirements imposed on offenders conflict with those terms contained in existing sentencing orders and plea agreements.

*Categorization of sex offenders*

33.  AB579 established a tier level system that classifies "offenders convicted of crimes against children" and "sex offenders," which is now codified in N.R.S. Title 14 Procedure in Criminal Cases, 179D Registration of Sex Offenders and Offenders Convicted of a Crime

Against a Child.  N.R.S. 179D.095 defines "sex offender" as "a person who, after July 1, 1956, is or has been" a) "convicted of a sexual offense listed in N.R.S. 179D.097…" OR has been "adjudicated delinquent by a court having jurisdiction over juveniles of a certain crimes against a child that is listed in N.R.S. 62F.200 if the offender was 14 or older when the crime was committed."[2]  Thus, whether someone is considered a sex offender and falls within the law depends on whether their crime falls within the definition of "sexual offense" contained in N.R.S. 179D.097.

34.  This definition is extremely broad and far-reaching.   First, it includes crimes that were committed as far back as July 1, 1956.  Second, the only sexual conduct that appears to be exempted is consensual sexual conduct if the victim was an adult or at least 13 years of age and the offender was not more than four years older than the victim at the time the offense was committed.  N.R.S. 179D.097(2).  Crimes that constitute "sexual offenses" range from a first degree murder committed in the perpetration of sexual assault of a child less than 14 years of age to the following catch-all category that could include many relatively minor, victimless offenses, including misdemeanors:

**any other offense that has an element involving a sexual act or sexual conduct with another.**

N.R.S. 179D.097(1)(p). The meaning of "sexual act" or "sexual conduct" is not defined, nor is any other statutory definition referenced. Under a separate chapter, 201 of Title 15, N.R.S. 201.263 defines "sexual conduct" in the context of prostitution as "acts of masturbation, homosexuality, sexual intercourse or physical contact with a person's unclothed genitals or pubic

---

[2] As to offenders convicted of crimes against children, NRS 179D.0559 defines "offender convicted of a crime against a child as "a person who, after July 1, 1956, is or has been" convicted of certain crimes against children listed in NRS 179D.0357 or has been "adjudicated delinquent by a court having jurisdiction over juveniles of a certain crimes against a child that is listed in NRS 62F.200 if the offender was 14 or older when the crime was committed."

- 9-

COMPLAINT

area."  While it is unclear whether this definition is applicable for purposes of defining sexual conduct under N.R.S. 179D.097(1)(p), it shows how broadly "sexual conduct" could be interpreted and how many individuals could be subject to at least a Tier I categorization.

35.  On information and belief, due to the broad scope of the definition of sexual offender, individuals who may never have been required to register as sex offenders in the past will now have to.  For example, if an individual "knowingly causes to be performed or exhibited, or engages in the performance or exhibition of, any obscene, indecent or immoral show, act or performance is guilty of a misdemeanor."  N.R.S. 201.253.  Individuals convicted under N.R.S. 201.253 are only required to pay a fine not exceeding $1000 or be imprisoned in jail not to exceed six months.  N.R.S. 193.120.  However, after the new law goes into effect on July 1, that same individual will now be required to register as a Tier I level sex offender.

36.  In addition to the broad catch-all category, the definition of "sexual offense" extends to offenses that are "determined to be sexually motivated pursuant to N.R.S. 175.547 or 207.193."  N.R.S. 179D.097(1)(r).  N.R.S. 175.547 defines an offense that is sexually motivated and states, "an offense is sexually motivated if one of the purposes for which the person committed the offense was sexual gratification."  Thus, if an individual masturbates or is caught naked or flashing in a park in violation of N.R.S. 201.220, the individual could be classified as a sex offender.  Similarly, stealing pornography out of a store could be considered a sexually motivated offense and thus the individual could be classified as a sex offender.  And, as noted above, all of these crimes would fall within the definition of "sex offender," even if they were committed more than fifty years ago.[3]

---

[3] It is unclear whether individuals who were convicted of a crime that constituted a sexual offense pre-2008 but is no longer a crime today would be classified as a sex offender.  For

COMPLAINT

37.   The scope of the duties and restrictions offenders are subject to – such as where they can live, and how long they have to register for – depends on which tier level they are assigned to.  Prior to the changes in the law, sex offenders were individually assessed based on guidelines created by the Attorney General for risk of recidivism pursuant to N.R.S. 179D.720.  These factors included but were not limited to; past criminal history, age of the victim, psychological profile, and response to treatment and behavior.  N.R.S. 179D.720(c).

38.   Under the New Sex Offender Laws, now all "sex offenders" and "offenders convicted of a crime against a child" are *automatically* assigned to a tier level, depending on the crime that they committed.  N.R.S. 179D.113-117.  Tier III is the most restrictive tier and previously was reserved for high-risk offenders while Tier I is the least restrictive tier and was previously considered the low-risk tier.

39.   While the law is ambiguous, the classification appears to work as follows: (a) Offenders convicted of the *specific* offenses listed in N.R.S. 179D.117 are Tier III offenders; (b) Offenders who do not already "fit" in the Tier III bucket and were convicted of one of the specific offenses listed in N.R.S. 179D.115 are Tier II offenders; and (c) any offenders who fit the definition of "sex offender" or "offenders convicted of crimes against children" are Tier I offenders. All sex offenders are at least Tier I:  N.R.S. 179D.113 states that "'Tier I offender' means an offender convicted of a crime against a child or a sex offender other than Tier II or Tier III offender."   N.R.S. 179D.115 states that "'Tier II offender means an offender convicted of a crime against a child or a sex offender, other than a Tier III offender, whose crime against a child is punishable by imprisonment for more than 1 year" or whose sexual offense falls within one of the specifically listed crimes if committed against a child.  *See* N.R.S. 179D.115(1)(a)-(e).

example, it is unclear whether an individual convicted of sodomy in 1960 would be classified as a sex offender today and be required to register as such.

COMPLAINT

N.R.S. 179D.117 states that "'Tier III offender' means an offender convicted of a crime against a child or a sex offender who has been convicted of" one of the specifically listed crimes which include murder, sexual assault, battery, abuse of a child under 13 years of age and kidnapping as well as the attempted forms of any of these crimes.  *See* N.R.S. 179D.117(1)-(5).

40.   On information and belief, many people who committed non-violent and minor crimes will now be classified as dangerous offenders, while dangerous offenders may be classified as low risk.   For example, an 18 year old individual who had sex with their 15 year old boyfriend or girlfriend will now be classified as a Tier III sex offender.  N.R.S. 200.364; N.R.S. 179D.113-117.  In contrast, an individual who is convicted of abuse of a child involving sexual abuse or sexual exploitation could only be a Tier II level offender if they did not commit the crimes enumerated in the Tier III definition, since an offender is categorized as a Tier II level offender if the offender "committed abuse of a child pursuant to N.R.S. 200.508, if the abuse involved sexual abuse or sexual exploitation." N.R.S. 179D.113(b). N.R.S. 200.508 defines abuse of a child as "[a] person who willfully causes a child who is less than 18 years of age to suffer unjustifiable physical pain or mental suffering as a result of abuse or neglect or to be placed in a situation where the child may suffer physical pain or mental suffering as the result of abuse or neglect."

41.   There is no means to challenge or seek a reduction in a tier level assignment and its implications, other than a reduction of the registration period that is available in two very limited circumstances: (1) offenders who now fall within Tier I and who have already registered for ten consecutive years; and (2) Tier III juvenile offenders who have already registered for twenty-five consecutive years.  N.R.S. 179D.490(3) as amended by AB579, Sec. 41.

***Registration Duties***

COMPLAINT

42.   Under the New Sex Offender Laws, all "sex offenders" must register with local law enforcement. N.R.S. 179D.240. Which tier level an offender falls with in determines the length of mandatory registration. Tier 1 offenders must register for 15 years; Tier II for 25; Tier III for life. N.R.S. 179D.460, as amended by AB 579, Sec. 22-24. The duty to register is retroactive:

> In addition to any other registration that is required pursuant to N.R.S. 179D.450, each offender or sex who, **after July, 1, 1956 is or has been convicted of a crime against a child or a sexual offense** shall register with local law enforcement

N.R.S. 179D.460, as amended by AB 579, Sec. 39.  What is not clear, however, is how long offenders must register for if they were convicted before AB579 goes into effect in July.   N.R.S. 179D.490  states that "registration begins on the date that the Central Repository or appropriate agency of another jurisdiction establishes a record of registration for the offender or sex offender or the date that the offender or sex offender is released, whichever occurs later."  Thus, there is a discrepancy between individuals who are currently registering and those individuals who are either done registering or have never been required to register.  For example, it seems for an individual who is currently required to register, the years that they have accumulated thus far would count towards the total minimum years required pursuant to N.R.S. 179D.490.  However, for those individuals who were previously not required to register or have already completed their registration requirements per their probation or parole agreement, it seems they would have to start at zero upon registering, as the statute requires the years of registration to be consecutive.

*Lack of Notice*

43.     Under the New Sex Offender Laws, offenders are not entitled to notice regarding their tier assignment or the duties or limitations imposed on them.  While the prior law, N.R.S. 179D.740, provided for notification to defendants regarding their tier level determination, that section was repealed by AB 579, Sec, 6.  After July 1, 2008, there will be no mechanism for

COMPLAINT

ensuring that all offenders are apprised of their status as sex offenders, their tier level assignment, or their duties to register. Pursuant to N.R.S. 176.0926, the court is supposed to notify at sentencing defendant's tier level and requirement to register as a sex offender, however, N.R.S. 176.0926 also waives the court's liability for failure to notify the defendant. Similarly, incarcerated individuals and those individuals who are currently on probation, parole or lifetime supervision are to be notified by the Central Repository pursuant to N.R.S. 179D.450 of their new tier level and requirement to register. However, again, N.R.S. 179D.450 waives any liability of the Central Repository for failing to notify the offender.

44. While all "sex offenders" from July 1, 1956 to the present appear to have an individual responsibility to register pursuant to N.R.S. 179D.240, there is no provision on how they will be provided with notice of this duty or of their tier level. Those individuals who are suddenly required to re-register and are no longer "in the system" – or were never "in the system" to begin with, will have no way of receiving notice of these new changes and registration requirements. The broad – and unclear – definition of "sexual offender" further complicates matters. If the state is not statutorily required to give notice to the individual of their changed status, essentially the duty is left up to the individual to determine if their specific offense categorizes them as a sexual offender and thus requires them to register.

***All offenders are subject to community notification***

45. As long as someone is subject to registration they are subject to community notification. The law has not changed with regards to who the sex offender is required to notify, however, the law has changed who the local law enforcement agency is required to notify. Prior to July 1, N.R.S. 179D.730 controlled the procedure for how the community was notified of an individual's sex offender status. For Tier I level offenders, law enforcement was required to

notify other law enforcement agencies that may encounter the offender. N.R.S. 179D.730.  For Tier II level offenders, law enforcement was also required to notify schools, religious organizations and youth organizations that are likely to encounter the individual. *Id.*  And for Tier III offenders, law enforcement was required to notify the public through a means designed to reach members of the public who are likely to encounter the sex offender.  *Id.* Now, pursuant to N.R.S. 179D.475, all offenders are subject to much broader community notification, even those who committed their crimes as far back as 1956.  This is based on the fact that N.R.S. 179D.475 states "the Central Repository shall immediately provide all updated information pursuant to . . .  N.R.S. 179D.460" to law enforcement for community notification.  And N.R.S. 179D.460 retroactively applies registration requirements for any individual "who, after July 1, 1956, is or has been convicted of a crime against a child or a sexual offense."

46.    A sex offender is required to register and provide information to the local law enforcement agency which includes but is not limited to the offender's name and aliases, social security number, address, license plate number and description of motor vehicle information pursuant to N.R.S. 179D. 443.  The local law enforcement agency then must provide the information collected from the individual as well as a photograph and fingerprints to the Central Repository pursuant to N.R.S. 179D.460.  Local law enforcement must also provide the information to the following:

(1) Each school, religious organization, youth organization and public housing authority in which the offender or sex offender resides or is a student or worker;
(2) Each agency which provides child welfare services as defined in N.R.S. 432B.030;
(3) Volunteer organizations in which contact with children or other vulnerable persons might occur; and
(4) If the offender or sex offender is a Tier III offender, members of the public who are likely to encounter the offender or sex offender

N.R.S. 179D.475(a).  Moreover, local law enforcement "[m]ay provide any updated information obtained from the Central Repository …. to any other person or entity whom the law enforcement agency determines warrants such notification."  N.R.S. 179D.475(b).  The Central Repository also has a duty to notify any agency responsible for conducting employment-related background checks and any organization, company or person who requests such notification. N.R.S. 179D.475(1).

47.    While law enforcement is required to notify employers and other "members of the public who are likely to encounter" Tier III offenders, the extent of notification for Tier I and Tier II is completely within the discretion of local law enforcement. Tier I and Tier II offenders – which, again, include any offenders convicted of any crime with any sexual element since July 1, 1956 – are left at the mercy of law enforcement regarding who else will be notified of their sex offender status.  The effect of the revised statute is that many individuals who were never required to register before because their offense was not included in the definition of sexual offense pursuant to N.R.S. 179D.097 will now be required to register with local law enforcement and all offenders will be subject to broader community notification.

48.    The language of the statute is unclear.  It is ambiguous as to which institutions the law enforcement agency will be *required* to notify.  N.R.S. 179D.475(1)(b).  There are also no distance limitations to define where a sex offender is considered to "reside." N.R.S. 179D.475(1)  Similarly, the statute does not  define who "members of the public" are and how to determine who the offender is "likely to encounter." *Id.*

49.    Under the law, a Tier I individual who signed a plea agreement to minimal registration and no community notification requirements may now have to register as a Tier III sex offender and be subject to law enforcement informing individuals they are "likely to

- 16-

COMPLAINT

encounter" of their Tier III status.  Further, offenders who did not previously fall within definition of a sex offender pursuant to N.R.S. 179.095 will now have to register and will be subject to discretionary community notification by local law enforcement.

50.   Existing law N.R.S. 179B.200 requires the Central Repository (Department of Public Safety) to establish a repository regarding sex offenders and offenders convicted of certain crimes against children ("offenders").  AB579, Sec. 13 modifies N.R.S. 179B.250 regarding public access to information of offenders.  N.R.S. 179B.250 now requires the Central Repository to establish a community notification website and dictates the contents of the website.  Previously, only Tier II and III offenders were subject to the website, however the new law also includes "Tier I offenders who have been convicted of a sexual offense against a child or a crime against a child." N.R.S. 179B.250(7)(b).  Thus, once again, individuals who may not have been classified as a sex offender prior to the changes in the law may now be subject to community website notification.  Moreover, the individuals subject to community website notification will apply retroactively back to July 1, 1956.

51.   A "crime against a child," as defined in N.R.S. 179D.210, criminalizes consensual acts with any "child," defined as anyone under 18, and is not subject to the same similarity-in-age exemption found in the definition of sex offender in N.R.S. 179D(2) ("Sexual offense" does not include any act where the "victim" is "[a]t least 13 years of age and the offender was not more than 4 years older than the victim at the time of the commission of the offense.").  *See, e.g.* N.R.S. 201.300(d) (Making a Category B felon of anyone who "persuades, encourages or procures a person of previous chaste character to enter any place within this state in which prostitution is practiced, encouraged or allowed, for the purpose of sexual intercourse").

COMPLAINT

52.   N.R.S. 179B.250 requires that a warning be posted on the website explaining that the information "should not be used to unlawfully injure, harass or commit a crime against any person named in the registry or residing or working at any reported address and a notice that any such action could result in civil or criminal penalties."   N.R.S. 179B.250 states that the information on the website cannot be used for the specified unlawful purposes, but it is unclear whether a private organization who receives the information directly from the Central Repository and not from the website is subject to the same restrictions.  It is unclear whether N.R.S. 179B.200 limit private agencies from posting the information obtained from the Central Repository on their public websites.  Similarly, it is unclear whether people who misuse the information "channeled" through private companies are subject to the same criminal and civil penalties listed in N.R.S. 179B.280.[4]

### Lifetime Supervision

53.   Pursuant to N.R.S. 213.1243, the conditions for lifetime supervision include such things as residency and movement restrictions for Tier III level offenders, restrictions on the number of released prisoners who can occupy one residence without a license, as well as approval of any residency location and payment of costs for participation under the system.[5]

54.   As amended by AB579, Section 6, N.R.S. 176.0931 reads, in part:

1. If a defendant is convicted of a sexual offense, the court shall include in sentencing, in addition to any other penalties provided by law, a special sentence of lifetime supervision.

---

[4] On information and belief, private companies use the information from the Central Repository website, and then repackage and "resell" the information to law enforcement agencies who in turn give the public access to the information through their own websites.  It is unclear whether private companies are required to post the same warning when they give the public access to the information through their websites.

[5] As noted above, Tier III offenders must also register in person every 90 days.  Together, the Lifetime Supervision and registration requirements in essence impose lifetime probation on Tier III offenders.

COMPLAINT

2. The special sentence of lifetime supervision commences after any period of probation or any term of imprisonment and any period of release on parole.

Based on the statutory language of N.R.S. 176.0931 it is unclear whether the lifetime supervision requirement will apply retroactively.  The language of N.R.S. 176.0931 uses verbiage such as "the court shall include in sentencing" which implies that the new changes will not apply retroactively.  However, since it appears that the registration requirement will apply retroactively pursuant to N.R.S. 179D.460 it is possible that the lifetime supervision requirement will apply retroactively as well.  Further, it is not clear whether sex offenders *already* on lifetime supervision will be subject to the changed definitions/terms of lifetime supervision. Based on information and belief, Parole and Probation *is* imposing lifetime supervision and its changes retroactively.

***Residence and Movement Restrictions.***

55.  N.R.S. 176A.410, 213.1243, 213.1245 and 213.1255[6] establish movement and residence limitations on: (a) persons convicted of sexual offenses and granted probation and suspended sentences; (b) persons on lifetime supervision; and (c) prisoners released on parole. N.R.S. 176A.410, 213.1243 and 213.1245 all state the defendant may not:

knowingly be within 500 feet of any place, or if the place is a structure, within 500 feet of the actual structure, that is designed primarily for use by or for children, including, without limitation, a public or private school, a school bus stop, a center or facility that provides day care services, a video arcade, an amusement park, a playground, a park, an athletic field or a facility for youth sports, or a motion picture theater.  The provisions of this subsection apply only to a sex offender who is a Tier 3 offender.

Similarly, they prohibit offenders who were convicted of a sexual offense listed in subsection 6 of N.R.S 213.1255 against a child under the age of 14 years from:

---

[6] SB471, Secs. 2, 8, and 9 modified these provisions.

[living at any residence] within 1,000 feet of any place, or if the place is a structure, within 1,000 feet of the actual structure, that is designed primarily for use by or for children, including, without limitation, a public or private school, a school bus stop, a center or facility that provides day care services, a video arcade, an amusement park, a playground, a park, an athletic field or a facility for youth sports, or a motion picture theater."

56.   With respect to individuals placed on lifetime supervision (N.R.S. 176A.410) and probation or suspended sentence (N.R.S. 213.1243) the movement restrictions apply to all Tier III offenders but the residency restrictions only apply to Tier III offenders who are convicted of a sexual offense against a child under the age of 14 years, as listed in subsection 6 of N.R.S. 213.1255.  As for individuals placed on parole (N.R.S. 213.1245 & N.R.S. 213.1255) the movement restrictions apply to individuals "convicted of an offense listed in N.R.S. 179D.097" who are also Tier III level offenders.  Just as for individuals subject to probation and lifetime supervision, the 1,000-foot residency restriction applies to any parolee who was "convicted of an offense listed in subsection 6 against a child under the age of 14 years and who is a Tier III offender" is subject to 1000 foot residency restrictions.  N.R.S. 213.1255(1).  The difference between the offenses listed in N.R.S. 213.1255 and N.R.S. 179D.097 results in a bizarre discrepancy.  Although the movement restrictions for parolees in N.R.S. 213.1255 would only apply to individuals convicted of sexual assault or abuse/neglect of a child if either was committed against a child under 14 years of age, N.R.S. 179D.097 applies to all the same offenses as listed in N.R.S. 213.1255 as well as to individuals who were convicted of murder in the perpetration of attempted  sexual assault or sexual abuse, battery, and kidnapping.  It is unclear why there is this discrepancy in the statutes, but it is clearly an irrational and arbitrary decision as to who is subjected to the movement and/or residency restrictions.

COMPLAINT

57.   It is not clear to whom the residence or movement restrictions apply, and whether they apply retroactively. A proponent of the bill, Senator Dina Titus claims the intent of the New Sex Offender laws was to make the residential limitation and monitoring applicable to any Tier 3 offender.  On July 8, 2007 Titus stated "Some of new sex-offender law applies to those on supervision . . . [This bill] was drafted so that any Tier 3 sex offender is prohibited from living or loitering within those distances. We picked Tier 3 because that's the most serious. It's not just those under current supervision, or surveillance. It's all of them. That's the way it was intended, and that's the way I understand it to be interpreted." [7]  However, the language of the statute seems to make the residency restrictions only applicable to Tier III offenders who committed an offense against a child younger than 14 years of age.  N.R.S. 179D.097.

58.   Based on information and belief, Parole and Probation is imposing these restrictions retroactively, and arbitrarily.

### Non-Residents & Traveling

59.   Pursuant to N.R.S. 179D.460, if a non-resident is present for 48 hours or more within an incorporated city that has a police department the sex offender is deemed a resident offender and is required to register with the city police department within 48 hours of arrival.  It is unclear whether these individuals will also be subject to community notification pursuant to N.R.S. 179B.250.  After the individual sex offender registers with the city police department, N.R.S. 179D.460(8) requires the police department to forward to the Central Repository the information collected.  Then, pursuant to N.R.S. 179B.250 the Central repository is required to enter the information in the community notification website, and pursuant to N.R.S. 179D.475 law enforcement is also required to notify the specifically listed individuals or organizations

[7] http://www.nevadaappeal.com/article/20070708/NEWS/107080095.

COMPLAINT

within the community.  *See* N.R.S. 179D.475(1)(a)-(e) & (2)(a)(1)-(4).  Based on the statutory provisions for how newly registered sex offenders are handled by the law enforcement and the Central Repository and the lack of any exception for non-resident sex offenders, it seems likely that non-resident sex offenders will be subject to community notification.

60.   There is nothing in the statutes regarding how non-residents are to receive notice that they must register with the local police department.  For those individuals who are required to register as sex offenders in their own state there is a possibility that they will receive notice from their state.  For example, in Nevada N.R.S. 179D.450 requires the Department of Corrections or local police department to inform the offender that he/she has a "duty to register in any other jurisdiction during any period in which he is a resident of the other jurisdiction." N.R.S. 179D.450(3)(a)(1)(III).   However, not only is the Central Repository and/or police department's liability for failing to notify waived in N.R.S. 179D.450(4), there is also a problem with notification for individuals who are not required to register as sex offenders in their home state but who would be classified as sex offenders under Nevada's definition and thus would be required to register.

***Punishment for violations of the New Sex Offender Laws***

61.   Pursuant to N.R.S. 179D.550 an offender or sex offender who "fails to register with a local law enforcement agency; fails to notify the local law enforcement agency of a change of name, residence, employment or student status; or provides false or misleading information to the Central Repository or a local law enforcement agency is guilty of a category D felony and shall be punished as provided in N.R.S. 193.130." N.R.S. 193.130 states a category D felony is punishable by no less than 1 year and no more than 4 years as well as up to $5000 in fines.  This

COMPLAINT

is a serious penalty, especially for an individual who may not receive notice of their tier level or duty to register as a sex offender.

**THE EFFECTS ON THE DOES**

62.  Plaintiff Doe 1 accepted a plea agreement in 1986, pleading guilty to Attempted Lewdness with a Minor Under 14.  The Court ordered a suspended sentence and two years probation.  As part of the probation agreement the court ordered Doe 1 to enroll and complete counseling, have no contact with his victim, and perform 100 hours of community service.  Doe 1 has completed all his requirements, was honorably discharged from probation in 1988 and has not been convicted or charged with any misconduct or crimes since.  Upon completing probation in 1988, Doe 1 was not required to register as a sex offender.  However, in 1998 Doe 1 received notice, based on new sex offender laws, that he would be required to register as a Tier I level offender.  After an argument with a police officer when registering as a sex offender, his Tier status was moved to Tier II.  As a Tier II, Doe 1 was required to register every 180 days.  He was not subject to any community notification.  Doe 1 has now been informed by the Department of Safety that he will now be classified as a Tier III level offender and be required to register in person every 90 days and will be subject to neighborhood and website notification.  Doe 1 is also concerned he will have to move as he lives within 1000 feet of a school in violation of the movement/residency restrictions contained in SB 471.  Doe 1 lives with his wife of fifty-one years and has five children and twelve grandchildren that live in Las Vegas.  Doe 1 is extremely worried that his family will be subject to harassment and embarrassment upon community notification of his sex offender status.  Doe 1 would never have accepted the plea deal if he knew what the State of Nevada would subject him and his family to.

COMPLAINT

63.   Plaintiff Doe 2 is a resident of Las Vegas and Clark County.  He accepted a plea agreement in 1997, pleading guilty to Attempted Lewdness with a Minor Under 14. He is innocent, but took the plea to avoid the risk of prison time. The court ordered a suspended sentence, five years probation and parole, and fees and restitution. The court also ordered that, *while Doe 2 was on probation*, he was prohibited from going to the movies (except with his fiancée), schools (except to pick up his son), and the parks. Doe 2 has completed all his requirements and finished probation in 2006, and has not been convicted or charged with any misconduct or crimes. However, despite his plea agreement, Doe 2 was required to be on lifetime supervision after his probation ended. Doe 2 was assessed as a low danger to society, Tier 1. He was only required to register in person once a year, and was only required to be on lifetime supervision for a limited period. He was not subject to any community notification. Doe 2's Parole and Probation officer and the Nevada Department of Public Safety have informed him that he is now a Tier III offender, despite the fact that he does not fit the apparent statutory meaning of AB579. Now, Doe 2 must register in person every 90 days, is prohibited from picking his children up from school or attending school events, will be subject to neighborhood and website notification and is subject to the movement and residency restrictions contained in SB 471. Doe 2 lives with his wife and three children, and shares custody of his son from his first marriage. He fears for the safety of his family once community notification is implemented. Doe 2 would never have accepted the plea deal if he knew what the State of Nevada would subject him and his family to.  Doe 2 has been required to comply with the new requirements before the effective date of July 1, 2008, and is confused about the meaning of the laws that apply to him.

64.   Plaintiff Doe 3 is a resident of Reno and Washoe County. He accepted a plea agreement in 2005, pleading guilty to Attempted Lewdness With a Minor Under 14.  Doe 3 was

COMPLAINT

accidentally caught nude in his house by his granddaughter, but he never attempted any lewd

conduct with her.  He accepted a plea deal to spare his family from trauma, and because he

believed that a vindictive, drug-addicted relative's testimony might convict him.  The court

ordered a sentence of five years of probation and one year of house confinement.  The court also

ordered that Doe 3 attend weekly counseling sessions.  He was not subject to community

notification.  Doe 3 signed the agreement with the understanding that he would not be classified

as anything but a Tier I offender, and that the law dictated that.  Doe 3 also understood that he

would not be subject to any restrictions other than those in his plea agreement. Once community

notification is implemented, Doe 3 fears for the health and safety of his wife, who lives with him,

and their twenty year-old grandson who attends a nearby college, as well as himself.  Doe 3

would not have accepted the plea deal if he knew what the State of Nevada would subject him

and his family to.

 65.  Plaintiff Doe 4 is a resident of North Las Vegas and Clark County.  He was charged

with child abuse and neglect in 2005.  He refused numerous plea deals over a two-year pretrial

period because he was innocent and the deals required him to register as a sex offender, which

would severely limit his ability to participate in the day-to-day lives of his many grandchildren.

In 2005, just before trial, Doe 4 agreed to plead guilty to two counts of Child Abuse and Neglect,

with an on-the-record stipulation that the conviction would not include registration. The court

ordered a suspended sentence, five years of probation, therapeutic counseling, DNA testing, fees,

and restitution. Doe 4 is fully abiding by these conditions, going to group therapy every week

and reporting to Parole and Probation every month. Since the entry of his Judgment of

Conviction he has received periodic form letters from the Nevada Department of Public Safety

informing him that he needs to register. Each time he receive this type of letter, Doe 4 takes it to

COMPLAINT

his Probation Officer. When this first happened, his Probation Officer checked with the court and confirmed that Doe 4 was not subject to registration. However, when Doe 4 took the latest copy of this same letter to his current Probation Officer, his Probation Officer told him to immediately register with the Nevada State Police, which he did.  Doe 4 now must register in person every ninety days, will be subject to neighborhood and website community notification, and is subject to the movement and residency restrictions contained in SB 471. Doe 4 lives with his wife of thirty-one years in the house that they have owned for thirty-one years. He believes that he will immediately lose his job, because his employer frequently works at parks and schools and he will lose the contact with his grandchild that he bargained for in the plea agreement. Doe 4 would never have accepted the plea agreement, if he knew that terms of the sentence and the explicit promise of the judge could be undone.

66.   Doe 5 is a resident of Reno and Washoe County, Nevada. Doe 5 accepted a plea agreement in 2003, pleading guilty to Lewdness with a Minor under 14 resulting from a single event that he regrets and takes full responsibility for. He accepted the plea agreement to avoid any further trauma to his daughter. Doe 5 was sentenced to five years of probation, which he has successfully fulfilled; and lifetime supervision. While intoxicated, Doe 5 allowed his eleven year-old daughter to inappropriately touch him. He immediately recognized the seriousness of his conduct and sought the advice of his wife. After seeking help for the child from local health service providers, Doe 5 voluntarily turned himself into the Washoe County Sherriff and without delay sought counseling to deal with his own problems. Doe 5's individualized sex offender evaluation, classified him as Tier I offender, a low risk to society, based upon his psychological assessment, history and the low severity of the incident (only contact was above the clothes). In May 2008, Doe 5 received a letter from the Nevada Department of Public Safety stating that he

COMPLAINT

had been reclassified as Tier III offender, effective July 1, 2008. Later that month, Doe 5 was informed by his Parole officer that his residence, which had been previously approved by Parole and Probation, was now too close to the neighborhood trailhead that leads into a private community park and playground, although the actual playground and park is more than 1,000 feet from Doe 5's residence. He was notified that he must sell the house that he lives in with his current wife and her stepson and move. Doe 5 believes that the financial burden of selling a house that was purchased just last year will bankrupt his family and destroy the business that he recently started, especially in the current economic climate. Doe 5 also fears that posting of his photograph and name and other information on neighborhood fliers and on any community notification websites will result in his family being singled out for scorn and ridicule and perhaps for threats of violence or destruction of property.

67.   Plaintiff Doe A, a resident of Reno and Washoe County, Nevada, entered into a plea agreement requiring him to plead guilty to two counts of Statutory Sexual Seduction. The change in law will require him to take time off work every 90 days to register in person.  Doe A and his wife have been unable to sleep since the notification of the change in his Tier status.  He is worried about the effect this will have on his family if his wife's co-workers find out about his prior convictions.  He is extremely concerned that he will have to move since he lives close to a school bus stop and this will be a profound financial hardship on his family since he lives three blocks from his wife's parents so that she can help care for them.  He is very worried that his neighbors will find out about his prior conviction and retaliate against his wife and daughter. He is afraid of losing his job as a heavy duty truck operator towing other big trucks since it might require him to travel to an area frequented by children or next to or even on a school property. He is also sometimes called out to tow school buses and is placed in close proximity to school

COMPLAINT

children leaving the bus.  His job earns $60,000.00 a year and he believes that he would have to take a job earning only $40,000.00 a year.

68.  Plaintiff Doe B, a resident of Las Vegas, Clark County, Nevada entered a guilty plea of one count of Attempted Sexual Assault. At sentencing the court ordered a suspended sentence of 48 to 120 months and placed him on probation not to exceed five years.  Doe B is in very bad emotional health. He has great anxiety over the new law and does not understand its effect on him. Doe B is the General Manager of a Construction Company that sometimes requires him to travel to the homes of customers or those that live near schools.  In the past his construction company has accepted jobs on school property.  He has already relocated his business location since it was too close to a public park that children frequent.  He also relocated his residence in anticipation of the new law since it was to close to a park and a school bus stop.  That property is now a rental with a loss of $800.00 a month.  He does not understand or know if he will lose access to the internet which could also have a profound impact on his ability to remain competitive in his business.

69.  Plaintiff Doe C, a resident of Las Vegas, Clark County, Nevada was convicted of two counts of Lewdness with a Child Under the Age of 14.  At sentencing, the court ordered a suspended sentence of 24 to 62 months on all counts to run concurrent to each other and placed Doe C on probation not to exceed five years.  Doe C was placed on a rigorous probation and the court further sentenced Doe C to Lifetime Supervision after being released from probation.  Doe C is now worried that the change in law as it will place the residence and movement restrictions on him as he was a Tier I offender prior to the law change.  Doe C knew that he was subject to Lifetime supervision and registration, but after being reclassified to Tier III under the new law, he will never be able to petition to be removed from the obligation of registration, will be subject

COMPLAINT

to neighborhood and website community notification, and will also be subject to the movement and residency restrictions contained in SB 471.  Doe C is extremely confused with the application of the new law and does not understand how the state can change what he agreed to in his Guilty Plea Agreement.

70.  Plaintiff Doe D is a resident of Henderson and Clark County, Nevada.  He accepted a plea agreement in 2005, pleading guilty to three counts of Attempted Lewdness With a Child Under 14 Years of Age.  At sentencing, the court ordered a suspended sentence of 12 to 60 months on all counts to run concurrent to each other and placed Doe D on probation not to exceed three years.  Doe D was placed on the rigorous conditions of NRS 176A.410 (required terms and conditions of sex offenders) and further sentenced Doe D to Lifetime Supervision after being released from probation.  On November 29, 2007, Doe D was honorably discharged from probation after having satisfactorily completed all of the conditions of probation.  Doe D was classified as a Tier I offender but will be reclassified as a Tier III offender under the new law.  Doe D knew that he was subject to Lifetime supervision and registration, but after being reclassified to Tier III under the new law, he will never be able to petition to be removed from the obligation of registration, will be subject to neighborhood and website community notification, and will also be subject to the movement and residency restrictions contained in SB 471.  Doe D is emotionally distraught and depressed with the enactment of the new law.  He currently lives near a grammar school and park which he believes is within 1000 feet and thus will be forced to move.  His sister, who lives with Doe D, has just had a baby.  Neither can afford to move out.  Doe D is extremely confused with the application of the new law and does not understand how the state can change what he agreed to in his Guilty Plea Agreement.

COMPLAINT

71. Plaintiff Doe E is a resident of Las Vegas and Clark County, Nevada. He accepted a plea agreement in 2002, pleading guilty to Attempted Lewdness With a Child Under the Age of 14 and two counts of Statutory Sexual Seduction. The court sentenced Doe E to 48 - 120 months for count 1 and 12-30 months on counts 2 and 3 to run concurrent with count 1. Doe E was also sentenced to Lifetime Supervision to commence after his release from parole or imprisonment. On January 9, 2008, Doe was honorably discharged from parole after successfully completing all requirements. The new law will change Doe E from a Tier II to a Tier III. The new law will require him to take a day off from work every 90 days to register in person and will likely result in his termination. Also, Doe E will now also be subject to the movement and residence restrictions. This makes him nervous because he lives near two school bus stops and he originally moved into an adult only section apartment but new management has changed that and now there are numerous children in his neighborhood. The new laws have caused Doe E extreme anxiety, inability to sleep and it causes him to cry uncontrollably for 2-3 hours at a time without reason. He also has a heightened sense of paranoia and sensitivity.

72. Plaintiff Doe F is a resident of Las Vegas and Clark County, Nevada. He pled guilty in 1983 pursuant to a Guilty Plea Agreement in Michigan to Attempted Criminal Sexual Conduct 2nd, and was sentenced. After moving to Las Vegas, Doe F was classified as a Tier I offender. He was only required to register by mail once a year. He has recently been told that he will be changed to a Tier III offender. The change in law will require him to take time off work every 90 days to register in person. Doe F is 59 years and cannot afford to lose his job. It is likely that he will lose his job if it is notified that he is a sex offender, which will occur with the new community registration laws and website community notification to which he will be subject. Doe F is in very bad emotional health and requires the help of his wife of 13 years and daughter

COMPLAINT

who lives with him.  His daughter has a 20 month old child.  He has great anxiety over the new law and does not understand its effect on him.  He never was on lifetime supervision but now fears that he will arbitrarily be placed on it and will no longer be able to live with his daughter.  If he is subject to movement and residency restrictions he will definitely lose his job as he is a limo driver and would no longer be able to go to any location that is 500 feet from schools, parks, day cares, etc.  His apartment is close to Cimmeron High School.  Doe F also relies heavily on the support of his extended family that live in Michigan and Washington, both of which have children.  The travel restrictions in the new law will place a great burden on his entire family.

73.  Plaintiff Doe G is a resident of Las Vegas and Clark County, Nevada.  Doe G was convicted of Attempted Sexual Assault in 1983 in Colorado.  In 1986 he was released from supervision and in 1998 he moved to Las Vegas for work.  He has been married for 21 years and currently lives with his wife and his stepson and stepson's wife and granddaughter.  At sentencing, he was never advised of or sentenced to Lifetime Supervision.  His only requirement was to register yearly with the central repository.  He has recently been notified that he will be changed from Tier I to Tier III and that he will now have to register in person every 90 days.  This will require him to take an entire day off work and could cause him to lose his job as an area manager where he currently earns a six figure income.  Doe G and his wife are extremely distraught and confused with the new law and have caused them great stress and anxiety.  They have even lost sleep and appetite.  If Doe G is subject to lifetime supervision, as many do believe will be the case with the enactment of the new law, then Doe G, will be required to sell his home of 11 years, resulting in a huge financial loss to him and his family as he lives within 500 feet of a school and near a bus stop.  The community notification requirements could also cause Doe

COMPLAINT

G's stepson to lose custody of his daughter because his stepson is financially unable to move out of Doe G's home.

## V.   FIRST CAUSE OF ACTION
### Violation of the Fourteenth Amendment to the
### United States Constitution under 42 U.S.C. § 1983
### (Due Process)

74.   Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as set forth fully herein.

75.   Pursuant to 42 U.S.C. Section 1983, this claim is brought by all Plaintiffs against all State Defendants, by Does 3 and 5, and Doe A against the Reno Law Enforcement Defendants, by Does 1 and 2, and Does B, C, E, F, G against Defendants Roger and Gillespie, by Doe 4 against Defendants Roger and Forti, and Doe D against Defendants Roger and Henderson Law Enforcement.

76.   The New Sex Offender Laws are vague and ambiguous and fail to sufficiently define who is subject to the laws, what their effects are, and what the penalties for failure to comply with them are, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

77.   The New Sex Offender Laws also violate the Due Process Clause because they reassess offenders and subject them to new restrictions and requirements, regardless of any actual risk to society and without the possibility of any hearing and without any requirement by the State of Nevada to provide offenders with any notice of their classification or any new prohibitions or requirements.

78.   Further, the New Sex Offender Laws violate the Due Process Clause of the U.S. Constitution because they fail to rationally further any legitimate governmental purpose.

COMPLAINT

79.   Finally, the New Sex Offender Laws violate the Due Process Clause of the U.S. Constitution because they vary the terms contained in the plea agreements of Does 1-5 and Does A-G.

80.   Each of the Plaintiffs has been, or imminently will be, injured by these constitutional violations, and the Plaintiffs are entitled to declaratory and injunctive relief.

## VI.   SECOND CAUSE OF ACTION
### Violation of Nev. Const., Art. 1, § 8
### (Due Process)

81.   Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as set forth fully herein.

82.   This claim is brought by all Plaintiffs against all State Defendants, by Does 3 and 5, and Doe A against the Reno Law Enforcement Defendants, by Does 1 and 2, and Does B, C, E, F, G against Defendants Roger and Gillespie, by Doe 4 against Defendants Roger and Forti, and Doe D against Defendants Roger and Henderson Law Enforcement.

83.   For the same reasons that the New Sex Offender Laws violate the due process clause of the U.S. Constitution, they violate the due process clause of the Nevada Constitution.

## VII.   THIRD CAUSE OF ACTION
### Violation of the First Amendment to the
### United States Constitution under 42 U.S.C. § 1983
### (Free Exercise of Religion)

84.   Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as set forth fully herein.

85.   Pursuant to 42 U.S.C. Section 1983, this claim is brought by all Plaintiffs against all State Defendants, by Does 3 and 5, and Doe A against the Reno Law Enforcement Defendants, by Does 1 and 2, and Does B, C, E, F, G against Defendants Roger and Gillespie, by Doe 4

- 33-

COMPLAINT

against Defendants Roger and Forti, and Doe D against Defendants Roger and Henderson Law Enforcement.

86.   Because churches and other places of worship fall within the places certain sex offenders may not "knowingly be" within 500 feet of under SB471 regardless of the actual known risk offenders, SB471 improperly interferes with offenders' right to practice religion without undue governmental interference.

87.   The Plaintiffs have been, or imminently will be, injured by these constitutional violations, and the Plaintiffs are entitled to declaratory and injunctive relief.

## VIII.   FOURTH CAUSE OF ACTION
### Violation of Nev. Const., Art. 1, § 4
### (Free Exercise of Religion)

88.   Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as set forth fully herein.

89.   This claim is brought by all Plaintiffs against all State Defendants, by Does 3 and 5, and Doe A against the Reno Law Enforcement Defendants, by Does 1 and 2, and Does B, C, E, F, G against Defendants Roger and Gillespie, by Doe 4 against Defendants Roger and Forti, and Doe D against Defendants Roger and Henderson Law Enforcement.

90.   For the same reasons that the New Sex Offender Laws violate the First Amendment to the U.S. Constitution, they violate the free exercise clause of the Nevada Constitution.

## IX.   FIFTH CAUSE OF ACTION
### Violation of the Fourteenth Amendment to the
### United States Constitution under 42 U.S.C. § 1983
### (Substantive Due Process)

91.   Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as set forth fully herein.

92.   Pursuant to 42 U.S.C. Section 1983, this claim is brought by all Plaintiffs against all State Defendants, by Does 3 and 5, and Doe A against the Reno Law Enforcement Defendants, by Does 1 and 2, and Does B, C, E, F, G against Defendants Roger and Gillespie, by Doe 4 against Defendants Roger and Forti, and Doe D against Defendants Roger and Henderson Law Enforcement.

93.   By impacting on the Does' ability to travel throughout Nevada, attend church or other religious services, go to Court or attorney offices, parent their children, and live with their families, the New Sex Offender Laws impinge on their fundamental rights to free association, travel, and to raise their children without undue governmental interference.

94.   Each of the Plaintiffs has been, or imminently will be, injured by these constitutional violations, and the Plaintiffs are entitled to declaratory and injunctive relief.

## X.     SIXTH CAUSE OF ACTION
### Violation of Nev. Const., Art. 1, § 8
### (Substantive Due Process)

95.   Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as set forth fully herein.

96.   This claim is brought by all Plaintiffs against all State Defendants, by Does 3 and 5, and Doe A against the Reno Law Enforcement Defendants, by Does 1 and 2, and Does B, C, E, F, G against Defendants Roger and Gillespie, by Doe 4 against Defendants Roger and Forti, and Doe D against Defendants Roger and Henderson Law Enforcement.

97.   For the same reasons that the New Sex Offender Laws violate the substantive due process clause of the U.S. Constitution, they violate the substantive due process clause of the Nevada Constitution.

## XI.     SEVENTH CAUSE OF ACTION
### Violation of the Fourteenth Amendment to the
### United States Constitution under 42 U.S.C. § 1983

COMPLAINT

**(Equal Protection)**

98.   Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as set forth fully herein.

99.   Pursuant to 42 U.S.C. Section 1983, this claim is brought by all Plaintiffs against all State Defendants, by Does 3 and 5, and Doe A against the Reno Law Enforcement Defendants, by Does 1 and 2, and Does B, C, E, F, G against Defendants Roger and Gillespie, by Doe 4 against Defendants Roger and Forti, and Doe D against Defendants Roger and Henderson Law Enforcement.

100. These laws are irrational, and designed only to burden an unpopular group.  New Sex Offender Laws thus violate the Equal Protection Clause of the U.S. Constitution.

101. Each of the Plaintiffs has been, or imminently will be, injured by these constitutional violations, and the Plaintiffs are entitled to declaratory and injunctive relief.

### XII.    EIGHTH CAUSE OF ACTION
### Violation of Nev. Const., Art. 1, § 1
**(Equal Protection)**

102. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as set forth fully herein.

103. This claim is brought by all Plaintiffs against all State Defendants, by Does 3 and 5, and Doe A against the Reno Law Enforcement Defendants, by Does 1 and 2, and Does B, C, E, F, G against Defendants Roger and Gillespie, by Doe 4 against Defendants Roger and Forti, and Doe D against Defendants Roger and Henderson Law Enforcement.

104. For the same reasons that the New Sex Offender Laws violate the substantive due process clause of the U.S. Constitution, they violate the guarantee to equal protection of the laws contained in the Nevada Constitution.

### XIII.   NINTH CAUSE OF ACTION

- 36-

**Violation of Eighth Amendment to the U.S. Constitution**
**United States Constitution under 42 U.S.C. § 1983**
**(Cruel and Unusual Punishment)**

105. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as set forth fully herein.

106. Pursuant to 42 U.S.C. Section 1983, this claim is brought by all Plaintiffs against all State Defendants, by Does 3 and 5, and Doe A against the Reno Law Enforcement Defendants, by Does 1 and 2, and Does B, C, E, F, G against Defendants Roger and Gillespie, by Doe 4 against Defendants Roger and Forti, and Doe D against Defendants Roger and Henderson Law Enforcement.

107. AB579 and SB471 impose extensive punishments, both on persons previously convicted of sexual offenses and prospectively, that are excessive in relation to the crimes offenders are convicted of. For example, anyone convicted of any crime with any "sexual element" since July 1, 1956 is considered a sex offender under the New Sex Offender Laws and is subject to community notification and registration requests.

108. All new Tier III offenders, including the Plaintiffs, will now be subject to both extensive duties and extensive restrictions.

109. Similarly, Doe 1, for example, pled guilty to inappropriately touching a student – which he did on one occasion, for moments, and over the clothes – in 1986, over thirty years ago. He was never sentenced to time in prison, and successfully finished probation and the other terms of his plea agreement. The State of Nevada has evaluated Doe 1 and has determined that he is not a risk. Now, years later, he is being classified a Tier III offender, the highest risk offender. As such, he must register every 90-days and is subject to community notification (not

COMPLAINT

only will his picture, name, address and other information be posted on the website, but his neighbors will be notified), and he may have to leave the house he shares with his wife.

110. Community notification can subject offenders to violence at the hands of vigilantes. Human Rights Watch, in a comprehensive 2007 study of sex offender laws (laws that were far less extreme than the New Sex Offender Laws about to be implemented in Nevada) and their effects and utility, found that public safety was not furthered by expansive notification and restriction provisions, but offenders were subjected to vigilantism:

> Information provided by state online sex offender registries, as well as information provided during community notification by law enforcement, is not just used by private citizens to determine what streets their children can walk on, or whom to avoid. **Neighbors as well as strangers harass, intimidate and physically assault people who have committed sex offenses. At least four registered sex offenders have been killed**.

p. 89, <u>No Easy Answers: Sex Offender Laws in the United States</u>," Human Rights Watch, available at http://www.hrw.org/reports/2007/us0907/us0907web.pdf . Each of the Plaintiffs has been, or imminently will be, injured by Eighth Amendment violations, and the Plaintiffs are entitled to declaratory and injunctive relief.

### XIV.  TENTH CAUSE OF ACTION
### Violation of Nev. Const., Art. 1, § 8
### (Cruel and Unusual Punishment)

111. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as set forth fully herein.

112. This claim is brought by all Plaintiffs against all State Defendants, by Does 3 and 5, and Doe A against the Reno Law Enforcement Defendants, by Does 1 and 2, and Does B, C, E, F, G against Defendants Roger and Gillespie, by Doe 4 against Defendants Roger and Forti, and Doe D against Defendants Roger and Henderson Law Enforcement.

COMPLAINT

113. For the same reasons that the New Sex Offender Laws violate the cruel and unusual punishment clause of the U.S. Constitution, they violate the substantive due process clause of the Nevada Constitution.

## XV.   ELEVENTH CAUSE OF ACTION
### Violation of the Article 1, § 9 of the
### United States Constitution under 42 U.S.C. § 1983
### (*Ex Post Facto*)

114. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as set forth fully herein.

115. Pursuant to 42 U.S.C. Section 1983, this claim is brought by all Plaintiffs against all State Defendants, by Does 3 and 5, and Doe A against the Reno Law Enforcement Defendants, by Does 1 and 2, and Does B, C, E, F, G against Defendants Roger and Gillespie, by Doe 4 against Defendants Roger and Forti, and Doe D against Defendants Roger and Henderson Law Enforcement.

116. The effect and intent of AB579 and SB471 are both punitive, and the New Sex Offender Laws impose new punishments on Plaintiffs, including but not limited to the affirmative disability of having to register in person every 90 days, banishment from their families and communities, on offenders convicted before their enactment.

117. Each of the Plaintiffs has been, or imminently will be, injured by these constitutional violations, and the Plaintiffs are entitled to declaratory and injunctive relief.

## XVI.   TWELFTH CAUSE OF ACTION
### Violation of Nev. Const., Art.1, § 15
### (*Ex Post Facto*)

COMPLAINT

118. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as set forth fully herein.

119. This claim is brought by all Plaintiffs against all State Defendants, by Does 3 and 5, and Doe A against the Reno Law Enforcement Defendants, by Does 1 and 2, and Does B, C, E, F, G against Defendants Roger and Gillespie, by Doe 4 against Defendants Roger and Forti, and Doe D against Defendants Roger and Henderson Law Enforcement.

120. For the same reasons that the New Sex Offender Laws violate the ex post facto clause of the U.S. Constitution, they violate the substantive due process clause of the Nevada Constitution.

## XVII.  THIRTEENTH CAUSE OF ACTION
### Violation of the Fifth Amendment to the
### United States Constitution under 42 U.S.C. § 1983
### (Double Jeopardy)

121. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as set forth fully herein.

122. Pursuant to 42 U.S.C. Section 1983, this claim is brought by all Plaintiffs against all State Defendants, by Does 3 and 5, and Doe A against the Reno Law Enforcement Defendants, by Does 1 and 2, and Does B, C, E, F, G against Defendants Roger and Gillespie, by Doe 4 against Defendants Roger and Forti, and Doe D against Defendants Roger and Henderson Law Enforcement.

123. The New Sex Offender Laws impose new punishments on persons previously convicted, and impose registration duties, community notification, and movement and residence restrictions based on the crime originally committed, rather than any actual risk of recidivism, in violation of the Double Jeopardy Clause of the U.S. Constitution.

124. Each of the Plaintiffs has been, or imminently will be, injured by these constitutional violations, and the Plaintiffs are entitled to declaratory and injunctive relief.

## XVIII. FOURTEENTH CAUSE OF ACTION
### Violation of the Article 1, § 8 of the
### Nevada Constitution
### (Double Jeopardy)

125. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as set forth fully herein.

126. This claim is brought by all Plaintiffs against all State Defendants, by Does 3 and 5, and Doe A against the Reno Law Enforcement Defendants, by Does 1 and 2, and Does B, C, E, F, G against Defendants Roger and Gillespie, by Doe 4 against Defendants Roger and Forti, and Doe D against Defendants Roger and Henderson Law Enforcement.

127. For the same reasons that the New Sex Offender Laws violate the double jeopardy of the U.S. Constitution, they violate the substantive due process clause of the Nevada Constitution.

## XIX.   FIFTEENTH CAUSE OF ACTION
### Violation of Article 1, section 10 to the
### United States Constitution under 42 U.S.C. § 1983
### (Contracts Clause)

117. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as set forth fully herein.

118. Pursuant to 42 U.S.C. Section 1983, this claim is brought by all Plaintiffs against all State Defendants, by Does 3 and 5, and Doe A against the Reno Law Enforcement Defendants, by Does 1 and 2, and Does B, C, E, F, G against Defendants Roger and Gillespie, by Doe 4 against Defendants Roger and Forti, and Doe D against Defendants Roger and Henderson Law Enforcement.

119.    The New Sex Offender Laws operate as a substantial impairment to the pre-exiting contractual relationship between the state and Plaintiff's Guilty Plea Agreements by imposing new terms not negotiated which drastically increase, and, or require lifetime supervision, registration and community notification.

120.    Each of the Plaintiffs has been, or imminently will be, injured by these constitutional violations, and the Plaintiffs are entitled to declaratory and injunctive relief.

## XX.    SIXTEENTH CAUSE OF ACTION
### Violation of the Article I, Section 15 to the
### Nevada Constitution
### (State Contract Clause)

128. Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as set forth fully herein.

129. This claim is brought by all Plaintiffs against all State Defendants, by Does 3 and 5, and Doe A against the Reno Law Enforcement Defendants, by Does 1 and 2, and Does B, C, E, F, G against Defendants Roger and Gillespie, by Doe 4 against Defendants Roger and Forti, and Doe D against Defendants Roger and Henderson Law Enforcement.

130. For the same reasons that the New Sex Offender Laws violate the contacts clause of the U.S. Constitution, they violate the contracts clause of the Nevada Constitution.

## XXI.    SEVENTEENTH CAUSE OF ACTION
### Violation of the Fifth Amendment to the
### United States Constitution under 42 U.S.C. § 1983
### (Takings Clause)

**121.**    Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as set forth fully herein

COMPLAINT

**122.** Pursuant to 42 U.S.C. Section 1983,  This claim is brought by all Plaintiffs against all State Defendants, by Does 3 and 5, and Doe A against the Reno Law Enforcement Defendants, by Does 1 and 2, and Does B, C, E, F, G against Defendants Roger and Gillespie, by Doe 4 against Defendants Roger and Forti, and Doe D against Defendants Roger and Henderson Law Enforcement.

**123.** The New Sex Offender Laws, by placing residential and movement restrictions on Plaintiffs, unconstitutionally restricts Plaintiff's property rights to the point that it constitutes a regulatory taking requiring just compensation.

124.  Each of the Plaintiffs has been, or imminently will be, injured by these constitutional violations, and the Plaintiffs are entitled to declaratory and injunctive relief.

### XXII.  NINTETEENTH CAUSE OF ACTION
### Violation of Article III, Section I of the
### Nevada Constitution
### (Separation of Powers)

**125.** Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as set forth fully herein.

**126.** This claim is brought by all Plaintiffs against all State Defendants, by Does 3 and 5, and Doe A against the Reno Law Enforcement Defendants, by Does 1 and 2, and Does B, C, E, F, G against Defendants Roger and Gillespie, by Doe 4 against Defendants Roger and Forti, and Doe D against Defendants Roger and Henderson Law Enforcement.

**127.** The New Sex Offender Laws violates the States Separation of Powers doctrine as

COMPLAINT

it limits the judicial power of sentence finality as the law vacates existing court judgments

regarding sex offenders' classifications, and community notification and reverse final court

judgments setting the length of time that sex offenders must register.

128.   Each of the Plaintiffs has been, or imminently will be, injured by these

constitutional violations, and the Plaintiffs are entitled to declaratory and injunctive relief.

## XXIII. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request this Honorable Court for the following:

a.      A declaration that AB579 and SB471 violate, both facially and as applied by the

Defendants, the due process clause of the U.S. Constitution (U.S. CONST., Amend, XIV);

b.      A declaration that AB579 and SB471 violate, both facially and as applied by the

Defendants, the due process clause of the Nevada Constitution (NEV. CONST., Art. 1, § 8, cl. 5);

c.      A declaration that SB471 violates, both facially and as applied by the Defendants,

the First Amendment to the United States Constitution (U.S. CONST., Amend, I);

d.      A declaration that SB471 violates, both facially and as applied by the Defendants,

the right to practice religion without governmental inference protected by the Nevada

Constitution (NEV. CONST., Art. 1, § 4, cl. 5);

e.      A declaration that AB579 and B471 violate, both facially and as applied by the

Defendants, the equal protection clause of  the United States Constitution (U.S. CONST., Amend,

IV);

f.      A declaration that AB579 and SB471 violate, both facially and as applied by the

Defendants, the right to equal protection guaranteed by the Nevada Constitution (NEV. CONST.,

Art. 1, § 1);

g.    A declaration that AB579 and SB471 violate, both facially and as applied by the Defendants, the prohibition against cruel and unusual punishment contained in the United States Constitution (U.S. CONST., Amend, VIII);

h.    A declaration that AB579 and SB471 violate, both facially and as applied by the Defendants, the prohibition against cruel and unusual punishment contained in the Nevada Constitution (NEV. CONST., Art. 1, § 8, cl. 5);

i.    A declaration that AB579 and SB471 violate, both facially and as applied by the Defendants, the ex post facto clause of  the United States Constitution (U.S. CONST., Art. 1, §9, cl.10);

j.    A declaration that AB579 and SB471 violate, both facially and as applied by the Defendants, the ex post facto clause of the Nevada Constitution (NEV. CONST., Art. 1, §15);

k.    A declaration that AB579 and SB471 violate, both facially and as applied by the Defendants, the double jeopardy clause of  the United States Constitution (U.S. CONST., Am. V, Am. XIV);

l.    A declaration that AB579 and SB471 violate, both facially and as applied by the Defendants, the double jeopardy facto clause of the Nevada Constitution (NEV. CONST., Art. 1, §8, cl. 1);

m.    A declaration that AB579 and SB471 violate, both facially and as applied by the Defendants, the contracts clause of the United States Constitution (U.S. CONST., Art. 1, § 10);

n.    A declaration that AB579 and SB471 violate, both facially and as applied by the Defendants, the contracts clause of the Nevada Constitution (NEV. CONST., Art. 1, § 15);

o.    A declaration that AB579 and SB471 violates, both facially and as applied by the Defendants, the takings clause of the United States Constitution (U.S. CONST., Amend. V);

COMPLAINT

p.      A declaration that AB579 and SB471 violate, both facially and as applied by the Defendants, the takings clause of the Nevada Constitution (Nev. Const., Art. 1, § 9, cl. 6);

q.      A declaration that AB579 and B471 violate, both facially and as applied by the Defendants, the separation of powers doctrine of the Nevada Constitution (Nev. Const., Art. 3, § 1, cl. 1);

r.      A permanent injunction prohibiting each defendant from enforcing AB579 and SB471;

s.      Reasonable costs and attorneys fees; and

t.      Any further relief the Court deems appropriate.

## XXIV. DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all causes of action.

DATED:___June 24, 2008_____         **ACLU of  NEVADA,** Attorneys for Does 1-5

By:  _____/s/_____
          Margaret A. McLetchie

DATED:___June 24, 2008_____         **ROBERT L. LANGFORD & ASSOCIATES**, Attorneys for Does A-G

By:  _____/s/_____
          Robert L. Langford

COMPLAINT